UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES SCOTT, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 25 C 50078 |
| BRIAN LAMMER, | ) ) Judge Rebecca R. Pallmeyer ) |
| Warden, Thomson FCI, Respondent | ) ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Charles Scott is a prisoner at Thomson Federal Correctional Institute ("Thomson"), where he is currently serving a 618-month term of imprisonment. As part of his sentence, Scott is required to pay monthly installments of $5.00 through participation in the Inmate Financial Responsibility Program ("IFRP"). He contends in this petition for relief pursuant to 28 U.S.C. § 2241 [1] that the Bureau of Prisons (BOP) coerced him into agreeing to pay more than $5.00 per month, contrary to his sentence. He seeks an injunction requiring that the BOP abide by the payment schedule imposed in his sentence, and further that any excess payments be returned to him. Respondent urges that Petitioner's claims are moot, as the BOP has returned to the $5.00 per month payment schedule, and has credited all excess payments against Scott's future payment obligation. Respondent further asserts that Petitioner has no right to any additional relief because BOP maintains the unilateral authority to increase a prisoner's IFRP payments. Petitioner has not filed a reply to these arguments. The court concludes that Petitioner's claims are not moot but nonetheless fails to establish a right to relief.

## BACKGROUND

I. **The Inmate Financial Responsibility Program (IFRP)**

The IFRP is a program administered by the BOP aimed at assisting inmates in meeting their financial obligations (including special assessments, restitution, court fees and costs, and other federal or state obligations). *See United States v. Boyd*, 608 F.3d 331, 333 (7th Cir. 2010); 28 C.F.R. § 545.10. Through the IFRP, BOP staff work with inmates to develop payment schedules based on the inmate's documentation and resources, maintain documentation of the inmate's payments, and monitor the inmate's progress in meeting his or her obligations and "demonstrated level of responsible behavior." 28 C.F.R. § 545.11. Participation in the IFRP is voluntary—neither the BOP nor the sentencing court can order participation in the program. *See Boyd*, 608 F.3d at 335. Non-participation in the IFRP, however, results in the loss of significant privileges for inmates. These include, for example, eligibility for work furlough (other than emergency medical furlough), a work bonus payment or enhanced performance pay, assignment to work detail beyond the perimeter of the correctional facility, relief from monthly commissary spending limits, desirable housing placement, and participation in community-based programs.. *See* 28 C.F.R. § 545.11(d).

II. **Petitioner's Sentence and IFRP Payments**

On May 30, 2000, Petitioner was sentenced to a 618-month term of imprisonment for interference with commerce by robbery in violation of 18 U.S.C. § 1951, and carrying a firearm in relation to a violent crime in violation of 18 U.S.C. § 924(c). *United States v. Scott*, No. 99 CR 86-2, Dkt. 181, 182 (N.D. Ind., May 30, 2000) (*see* Sentencing Order, Resp't Ex. 1 [10-1] at 9–14.) As part of his sentence, Petitioner was ordered to pay restitution in the sum of $30,623.81. (*Id*. at 13.) The sentencing judge ordered that "[t]he restitution shall be paid in equal monthly installments of $5.00 during the period of incarceration through the Inmate Financial Responsibility Program." (*Id*. at 14.)

For 24 years, it appears that Petitioner paid $5.00 per month consistent with the payment schedule ordered in his sentencing. (*See* Pet. at 10 (noting "consistent action" of paying $5.00 per month for the first "26 years being imprisoned").) Things changed, however, after Petitioner arrived at FCI Thomson in July 2024. (Lodge Decl., Resp't Ex.1 [10-1] at 3 ¶ 14.) In August of that year, Petitioner's Case Manager, Amber Daughenbaugh, reviewed Petitioner's trust fund account and noted that Petitioner had received $2,103.68 in deposits over the previous six months. Concluding that Petitioner could make payments greater than $5.00 per month in restitution, Daughenbaugh contacted the Finance Litigation Unit of the U.S. Attorney's Office for the Northern District of Indiana (where Petitioner was sentenced), on August 11, 2024. In an email message, Daughenbach noted these new deposits and suggested that "we could possibly get an amended [Judgment and Commitment Order ("J&C")] due to the amount of money he has been receiving." (*Id*. at 4 ¶ 15; *see also* Email Corr., Ex. 1 [10-1] at 30–31.) She further noted that Petitioner's $5.00 per month payment schedule resulted in his paying less than the minimum payment set out in the contracts BOP entered into with prisoners--$25.00 per quarter. (Email Corr. at 31.) On September 19, 2024, the Financial Litigation Unit responded by advising Daughenbaugh that they interpreted Petitioner's sentencing order as setting "$5 [as] a minimum amount required," and stating that "if Mr. Scott can afford $25 per quarter, he should pay that towards his restitution." (*Id*. at 32.) Daughenbaugh then reached out to Petitioner on September 23, 2024, and he agreed to the $25 per quarter payment schedule to begin December 2024. (Lodge Decl. at 4 ¶ 17; Inmate Financial Plan, Resp't Ex. 1 [10-1] at 73.)[1] Petitioner made his final payment under the $5-per-month schedule on September 11, 2024—a one-time $60 payment that covered his IFRP obligations through September 2025. (Lodge Decl. at 4 ¶ 17.)

---

[1] There is little information in the record as to the circumstances of this interaction between Daughenbaugh and Petitioner leading to this new agreement. Petitioner asserts that he was "forced" to sign the new Inmate Financial Plan under "duress" from Daughenbaugh, but does not explain what circumstances made the interaction coercive—apart from the prospect of losing IFRP privileges should he decline to participate in the IFRP under the new payment schedule.

He made two payments, in total, under the new payment schedule: one $25 payment in December 2024, and a second $25 payment in March 2025. (*Id.*)[2]

### III. Procedural History

Petitioner filed a grievance with the Thomson FCI Administration on November 5, 2025, asserting that the new payment schedule violated his sentencing order and his due process rights, and seeking a return to his previous payment schedule. (Pet. at 2.) He did not (and to date has not) received a response to that grievance. (*Id.*) That same day, he filed an appeal to the Regional Office of the Bureau of Prisons, again receiving no response. (*Id.* at 3.) On December 11, 2024, he filed an appeal in the Central Office of the Bureau of Prison on the same grounds and received no response from that office. (*Id.*) Finally, on February 18, 2025, Petitioner filed his petition for habeas corpus in this court. This court reviewed the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and directed Respondent to file a response to the petition. (Order [6].)

At some point after Petitioner's filing of his petition before this court but before any ruling, "a decision [was] made to return him to a $5 per month IFRP payment plan . . . absent a change in the payment plan by his sentencing court." (Lodge Decl. at 4. ¶ 18.) BOP has, further, credited all of Petitioner's payments between September 2024 and March 2025 ($110 in total) against future payment obligations under the $5-per-month schedule—placing him on "Exempt" status until July 2026. (*Id.* at 4 ¶ 19.)

---

[2] The court observes here some confusion in Petitioner's payment records. It appears he paid in September for a year's worth of IFRP payments but paid quarterly payments in December 2024 and March 2025 for presumably the same period (there is no suggestion that these payments were paid in advance for future quarters). Petitioner, for his part, did not understand that the $60 September payment was intended to cover a year of $5-per-month payments; his petition seeks a return of this payment as inconsistent with the schedule set forth in his sentence. (*See* Pet. at 11.)

4

**DISCUSSION**

Because "The IFRP is a means of executing an inmate's sentence," the Seventh Circuit has held that a federal prisoner's "complaints about the BOP's administration of the program are cognizable" as habeas claims under 28 U.S.C. § 2241. *Ihmoud v. Jett*, 272 F. App'x 525, 526 (7th Cir. 2008). To be sure, these are unusual claims under the traditional habeas framework; § 2241 authorizes challenges "only to sanctions affecting the fact or duration of imprisonment," *Crosby v. Kallis*, No. 22-1416, 2023 WL 1514460, at *2 (7th Cir. Feb. 3, 2023), and the IFRP indirectly affects the "fact" of imprisonment only if the inmate is placed on "refuse" status.[3] Regardless, Respondent does not contest Petitioner's vehicle for bringing challenges to BOP's administration of his IFRP payments in this case, instead responding on the merits. Respondent argues that the Petition should be denied for two reasons: First, Respondent argues that Petitioner's claims are moot because he has been returned to his desired payment schedule and the payments he wants returned have been credited against future IFRP payments. (Resp. [10] at 4–6.) Second, Respondent argues that even if the petition were not moot, it would fail on the merits because BOP retains the authority to set payment schedules independent of an inmate's sentence. (*Id*. at 6–9.)

---

[3] There is room to debate whether the remedies sought by Petitioner here (an injunction regarding the payment schedule and a return of funds) are cognizable remedies for relief under § 2241. *See Yaromich v. Hufford*, No. 1:12-CV-2134, 2013 WL 1933019, at *1 (M.D. Pa. May 9, 2013) ("[§ 2241 is not an appropriate cause of action in which to seek reimbursement from the Bureau of Prisons for past payments from the IFRP account."); *Davis v. Joseph*, No. 3:23CV3952/MCR/MAL, 2024 WL 2835508, at *3 (N.D. Fla. Feb. 21, 2024), *report and recommendation adopted*, No. 3:23CV3952/MCR/MAL, 2024 WL 2833942 (N.D. Fla. June 4, 2024) ("Furthermore, return of the funds would not change the fact or duration of his imprisonment and a request for such relief is therefore not appropriate to raise in a § 2241 petition."); *Waggoner v. Garrett*, No. 2:23-CV-00206-JJV, 2024 WL 1141005, at *2 (E.D. Ark. Mar. 15, 2024). In contrast, the Fifth Circuit has been explicit that an inmate may seek to suspend IFRP payments (i.e., remedies beyond release) through a § 2241 petition. *See United States v. Diggs*, 578 F.3d 318 (5th Cir. 2009). The Seventh Circuit has not addressed the question of what remedies are available to inmates challenging IFRP procedures under § 2241, and this court declines to reach the issue as well, because it concludes that Petitioner's claim fails on the merits.

5

**I.      Mootness**

Article III of the Constitution limits this court's jurisdiction to "cases" and "controversies." *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016). "The mootness doctrine implements Article III's Case or Controversy requirement by preventing federal courts from resolving questions that cannot affect the rights of the parties before them." *Ruggles v. Ruggles*, 49 F.4th 1097, 1099 (7th Cir. 2022). A case is considered "moot" for the purposes of Article III standing when "it becomes impossible for a federal court to provide any effectual relief to the plaintiff." *Id*. (quotation omitted). There are exceptions to this doctrine for circumstances where a controversy is mooted due to the voluntary cessation of challenged behavior by the defendant, or where the controversy (while momentarily moot) is capable of repetition yet evading review. *See Ciarpaglini*, 817 F.3d at 544, 546.

Respondent's mootness argument is straightforward: Petitioner has gotten what he wanted. He is back on the old payment schedule of $5 per month, and his prior payments have been effectively "returned" to him in the form of future payment exemptions. (Resp. at 4.) Moreover, anticipating the argument that BOP's actions are capable of repetition, Respondent argues that the challenged conduct here (an increased payment schedule) is not the kind of "short duration" violation that courts have held are likely to evade review—it is not "one of those inherently transitory situations, such as a pregnancy or an election campaign, that will run its course faster than courts can usually act to provide complete review on the merits." *Ciarpaglini*, 817 F.3d at 547.

This court agrees that the "capable of repetition" exception does not apply here, but believes another exception does: voluntary cessation of the challenged conduct. The circumstances here show that BOP unilaterally decided to return to the old payment schedule and credit Petitioner's funds *after* Petitioner filed his petition. *See N. Texas Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 898 (N.D. Ill. 2024) ("Under the voluntary cessation

6

doctrine, a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (quotation omitted). Indeed, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024). Respondent voluntarily ceased collecting the larger sums but presumably could resume doing so. To overcome the voluntary cessation exception to mootness, the defendant (respondent here) bears the "formidable burden" of "prov[ing] no reasonable expectation remains that it will "return to [its] old ways." *Id*. (quotations omitted). Respondent cannot meet that burden here; indeed, the second argument in their brief argues precisely that BOP did nothing wrong and *maintains* the authority to adjust Petitioner's payment schedule. (*See* Resp. at 6.) They may be right about the merits, but their position makes clear that the voluntary cessation directly applies—the post-filing actions do not moot this case.

## II. The Merits

The court thus turns to the merits of Petitioner's claim, and begins by addressing Respondent's assertion that BOP retains the authority to set a payment schedule for meeting an individual's restitution obligations regardless of the language in the sentencing court's J&C. (Resp. at 6–7.) Respondent goes so far as to claim that "the BOP is not obligated to follow a sentencing order that structures an inmate's IFRP payments." (*Id*. at 7.) In taking this position, Respondent relies on a line of cases out of the Southern District of Illinois that appear to endorse the view that a sentencing court has no authority to set a payment schedule for an inmate's IFRP. *Beard v. True*, No. 14-CV-01143-DRH-CJP, 2017 WL 5973018, at *3 (S.D. Ill. Nov. 30, 2017) ("The BOP, and the BOP alone, has the authority to structure an inmate's payments under the IFRP . . . . The BOP is therefore not obligated to follow the District Judge's pronouncement that Petitioner was to pay $50 per month while enrolled in the program."); *United States v. Bradford*, No. 09-CR-30166-001-MJR, 2011 WL 971719 (S.D. Ill. Mar. 17, 2011) ("This Court has no

7

jurisdiction to . . . direct the BOP to adhere to a different schedule of restitution payments [apart from the IFRP].")

In according such broad authority to BOP to structure payment schedules, *Beard* and *Bradford* rely heavily on the case *United States v. Boyd*, 608 F.3d 331 (7th Cir. 2010) for the proposition that a sentencing court lacks jurisdiction over the IFRP program. But the holding in *Boyd* relates to the voluntariness of the IFRP program; that is, *Boyd* holds that a court cannot force a *defendant* or inmate to participate in the IFRP program. *Boyd* does not address the BOP's authority to ignore or diverge from a payment schedule set by a J&C. See *Boyd*, 608 F.3d at 333–34.) As this court reads the statutory language, BOP retains authority in the procedures of incarceration and collecting restitution payments, but sentencing courts also retain significant statutory discretion to specify, in the restitution order, the manner and schedule for making restitution payments. *See* 18 U.S.C. § 3664(f)(2); 18 U.S.C. § 3664(f)(3)(A). More importantly, Respondent's interpretation of the BOP's authority overlooks BOP's own program statement for the implementation of the IFRP program, which confirms that "if the J&C has a specific payment plan outlined, payments are to be collected according to the direction provided in the order." (*See* Program Statement, Resp't Ex. 1 [10-1] at 21.) Thus, regardless of whether BOP does in fact have authority to calculate a payment schedule in excess of a court's sentencing order, its own rules dictate that it instead adhere to the court's order. *See Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) ("[F]ederal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion.")

This court declines to endorse Respondent's notion that BOP has authority under its own rules to depart from the payment schedule set in Petitioner's J&C, but need not decide the issue in the circumstances of this case. Like its colleagues in Minnesota, this court concludes that even if "[t]he BOP cannot *require* [Petitioner] to pay more than the amount established in the criminal judgment[,] the BOP may *ask* him to agree to pay more *voluntarily*." *See Jones v. Fikes*, No. 20-

8

CV-1341 (SRN/HB), 2021 WL 536135, at *5 (D. Minn. Jan. 19, 2021), *report and recommendation adopted*, No. 20-CV-01341 (SRN/HB), 2021 WL 533700 (D. Minn. Feb. 12, 2021) (holding that BOP improperly deviated from payment schedule in sentencing order, but did not abuse its discretion when Petitioner had voluntarily agreed to pay more). Assuming that BOP lacks authority to institute a payment schedule more aggressive than directed in the J&C, Petitioner here has no basis for a § 2241 challenge because he voluntarily agreed to the non-compliant increase. See *United States v. Lemoine*, 546 F.3d 1042, 1046 (9th Cir. 2008). Here, there is undisputed evidence that Petitioner agreed to a modest increase (from $60 to $100 annually) in his payment schedule, and while he vaguely contends his agreement was the product of coercion, he has alleged no facts that would support such a contention. The fact that he would lose privileges, alone, does not render the agreement coercive or involuntary. See *id*. Respondent so argued (Resp. at 8) and Petitioner has not filed a reply. Without factual allegations that would support an inference that Petitioner was forced to sign the agreement against his will, his voluntary agreement extinguishes any claim of right to the payment schedule set in his J&C.

## CONCLUSION

The petition for habeas corpus [1] is denied.

ENTER:

Dated: August 29, 2025

_____
REBECCA R. PALLMEYER
United States District Judge